**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**

| | | |
|---|---|---|
| IVAN WILLIAMS, III, CAROLYN DEWINDT-WILLIAMS, TREBOR DEWINDT WILLIAMS and CHYNNA DEWINDT WILLIAMS, minors by and through their mother and next friend CAROLYN DEWINDT-WILLIAMS, | ) ) ) ) ) | Case No. 3:22-cv-0002 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FLAT CAY MANAGEMENT, LLC, d/b/a LINDBERGH BAY HOTEL AND VILLAS, and SHAQUORI HATCHETT, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

APPEARANCES:

PAMELA LYNN COLON, ESQ.
Law Offices of Pamela Lynn Colon, LLC
Christiansted, VI
   *For Plaintiffs,*

WILLIAM E. CRABILL, ESQ.
Cole, Scott & Kissane, P.A.
Miami, Fl
   *For Defendant Flat Cay Management, LLC,*

KYLE R. WALDNER, ESQ.
Waldner Law, P.C.
St. Thomas, VI
   *For Defendant Shaquori Hatchett.*

## MEMORANDUM OPINION

**MOLLOY, Chief Judge**

   **BEFORE THE COURT** are the following motions:

1) Defendant Shaquori Hatchett's Motion to Dismiss Complaint for Failure to State a Claim, or in the alternative, for a More Definite Statement (ECF No. 13), filed on April 11, 2022; and,

    2) Defendant Flat Cay Management, LLC's Motion to Dismiss Counts I & III of the Complaint and memorandum of law in support thereof (ECF Nos. 14-15), filed on April 11, 2022.

    For the reasons stated below, the Court will grant in part and deny in part the motions to dismiss and allow Plaintiffs to replead certain claims consistent with this opinion and accompanying order.

## I. FACTUAL AND LEGAL BACKGROUND

    In their Complaint (ECF No. 1) (Complaint or Compl.), Plaintiffs allege that Plaintiff Ivan Williams ("Williams") was a guest at Defendant Flat Cay Management, LLC's ("Float Cay") hotel. Compl. at ¶¶ 13 and 22.[1] During his stay, on the evening of March 15, 2021, Plaintiffs allege that Plaintiff Williams was in the lobby area of the hotel because he had forgotten his room key and fell asleep. *Id.* at ¶¶ 12 and 14. Plaintiffs further allege that Defendant Shaquori Hatchett ("Hatchett"), who was employed by Flat Cay as a security guard, took Williams' wallet, removed money from it, and took photos of his credit card(s).[2] Compl. at ¶¶ 7, 17, 18, and 28.[3] Plaintiffs claim that Hatchett then called the police, reporting that Williams had committed a crime. *Id.* at ¶ 21. According to the complaint, after Williams

---

[1] The Court questions Plaintiffs' statement that "Plaintiffs' Complaint clearly and unambiguously explains that all Plaintiffs were all business invitees of Defendant, Flat Cay, as overnight guests at that Defendant's hotel, Linbergh Bay Hotel." ECF No. 33 at 1. These facts are not plainly stated; in fact, no allegations in the Complaint even mention Plaintiffs Trebor Dewindt-Williams and Chynna Dewindt-Williams by name, and Plaintiff Carolyn Dewindt Williams is identified only in paragraphs numbered 3, 23, 25, and 26. In one allegation, Plaintiffs refer to "his room," meaning Plaintiff Ivan Williams. Compl. at ¶ 23. In another allegation, Plaintiffs refer to "their room." Compl. at ¶ 32. However, because no allegations are made regarding Plaintiffs Trebor Dewindt-Williams and Chynna Dewindt-Williams, this use of "their" could mean only Plaintiffs Ivan Williams and Carolyn Dewindt-Williams.

[2] The Court is unable to determine whether Plaintiffs accuse Hatchett of taking pictures of one card or more than one. At one point, Plaintiffs claim that Hatchett photographed Williams' "bank cards", i.e., plural; at another, reference a "credit card," i.e., singular; and at another, "credit cards," i.e., plural. *See* Compl. at ¶¶ 18, 28, and 30. Plaintiffs also state that "Defendant Hatchett removed money and photographed *a credit card* that was in Mr. Williams' wallet," in their opposition to Defendant Hatchett's motion to dismiss. ECF No. 33 at 2 (emphasis added).

[3] Plaintiffs allege that Defendant Hatchett "*attempted* to wake" Plaintiff Williams, Compl. at ¶ 15 (emphasis added), and then allege that Defendant Hatchett asked "Williams for his ID which was in Williams' wallet." *Id* at ¶ 16. After alleging that Hatchett took the "entire wallet . . . to the back room of the lobby," *id.* at ¶ 17, where he "snapped pictures of the front and back of Plaintiff WILLIAMS' bank cards," *id.* at ¶18, Plaintiffs allege that Hatchett "went back to [the] lobby area where Plaintiff WILLIAMS dozed off and placed the wallet on the table next to Plaintiff WILLIAMS." *Id.* at ¶ 20. It is not clear from the complaint whether Plaintiff Ivan Williams was awake or dozing during this sequence of events.

was confirmed to be a guest of the hotel, he was taken to his room. *Id*. at ¶¶ 22-23.[4] The following morning when money was discovered missing from Williams' wallet, as alleged by Plaintiffs, Plaintiff Carolyn Dewindt-Williams, went to the lobby, verified that there were cameras in the lobby, and asked to see the security footage from the previous night. *Id*. at ¶¶ 24-26. Plaintiffs also allege that, even though Flat Cay and police were able to ascertain from the surveillance video that Hatchett took the money from Williams' wallet and photographed his credit card(s), Flat Cay continued to employ Hatchett. *Id*. at ¶¶ 28-29.[5] Plaintiffs claim that they "were terrified and could not sleep due to the security guard, Defendant, HATCHETT, being allowed to still work there while having access to their room" and that Hatchett threatened Plaintiff Williams. *Id*. at ¶¶ 32-33.[6] Plaintiffs assert two counts against Flat Cay: Count I for negligence, specifically for the negligent "hiring, training and supervision of its employee" Hatchett, *id*. at ¶ 39, and Count III for intentional tort. Two counts also are asserted against Hatchett: Count II for negligence and Count IV[7] for the intentional torts of "assault, robbery, theft and defamation, per se." *Id*. at ¶ 48.

Hatchett moves to dismiss the Complaint for failing to state claims upon which relief can be granted or, in the alternative, for more definite statement. *See* ECF No. 13 at 1. Flat Cay moves to dismiss the two counts of the Complaint asserted against it, Counts I and III, for failure to state claims under Rule 12(b)(6). *See* ECF Nos. 14 and 15.

## II. LEGAL STANDARD

### A. Rule 12(b)(6) - Failure to State a Claim

A complaint, or certain portions thereof, may be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When reviewing a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint "in the light most favorable to the plaintiff.*" In re Ins. Brokerage Antitrust Litig.*,

---

[4] As observed by the Court herein at note 1, *supra*, the Complaint is completely devoid of any specific allegations regarding Plaintiffs Trebor Dewindt-Williams and Chynna Dewindt-Williams. Plaintiff Cheryl Dewindt-Williams is identified as their mother only in the case caption and the initial unnumbered paragraph of the Complaint, not in any actual allegations.

[5] The Complaint does not state when the alleged video was viewed by Flat Cay and the police.

[6] The Complaint is silent regarding the length of time Plaintiffs remained at the hotel after the alleged theft occurred or when Hatchett made the alleged threat.

[7] In what appears to be a typographical error, Count IV is misidentified as a second Count III. *See* Complaint at 6.

618 F.3d 300, 314 (3d Cir. 2010). The Court must accept as true all the factual allegations contained in the complaint and draw all reasonable inferences in favor of the non-moving party. *Alston v. Parker*, 363 F.3d 229, 233 (3d Cir. 2004). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010), *cert. denied*, 562 U.S. 1271 (2011).

The Supreme Court set forth the "plausibility" standard for overcoming a motion to dismiss in *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and refined this approach in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The plausibility standard requires the complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint satisfies the plausibility standard when the factual pleadings "allow[ ] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). This standard requires showing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability, . . . stops short of the line between possibility and plausibility of entitlement of relief." *Id.* (citing *Twombly*, 550 U.S. at 557) (internal quotation marks omitted).

To determine the sufficiency of a complaint under the plausibility standard, the Court must take the following three steps:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679).

*Williams et al. v. Flat Cay Management, LLC, et al.*
Case No. 3:22-cv-0002
Memorandum Opinion
Page 5 of 27

### B. Rule 12(e) – More Definite Statement

Rule 12(e) of Federal Rules of Civil Procedure provides in pertinent part:

A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response. The motion must be made before filing a responsive pleading and must point out the defects complained of and the details desired.

Fed. R. Civ. P. 12(e). "In the Third Circuit, a motion for a more definite statement is granted when 'the pleading is too vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].'" *Roth v. Clearchoice Mgmt. Servs., LLC*, No. 1:21-cv-20440-NLH-EAP, 2022 U.S. Dist. LEXIS 158970, at *6 (D.N.J. Sept. 2, 2022) (quoting *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736-37 (D.N.J. 2008)). *See also Fuhrman v. Mawyer*, No. 1:21-cv-02024, 2022 U.S. Dist. LEXIS 114455, at *10 (M.D. Pa. June 28, 2022) (where the court declares, "A Rule 12(e) motion should be granted 'when the pleading is so vague or ambiguous that the opposing party cannot respond, even with a simple denial, in good faith, without prejudice to [itself].'" (citing *Clark v. McDonald's Corp.*, 213 F.R.D. 198, 232-33 (D.N.J. 2003) (quoting *Sun Co. v. Badger Design & Constructors, Inc.*, 939 F. Supp. 365, 368 (E.D. Pa. 1996) (internal quotation marks omitted))). At the same time, 12(e) motions are disfavored and must be balanced with the liberal pleading requirements of Rule 8. *See, e.g., Roth*, 2022 U.S. Dist. LEXIS 158970, at *6 ("These motions are generally disfavored 'in light of the liberal pleading standards under the Federal Rules.'" (citation omitted)); *Furhman*, 2022 U.S. Dist. LEXIS 114455, at *10 ("[M]otions for a more definite statement are generally disfavored . . . . 'Rule 12(e) must be read in conjunction with Rule 8, which requires only a short and plain statement of the claim showing that the pleader is entitled to relief.'" (citation omitted)).

### III. DISCUSSION

### A. Failure to state a claim

It is well established that in diversity cases, a district court applies federal procedural law and state substantive law. *See, e.g., Schmigel v. Uchal*, 800 F.3d 113, 119 (3d Cir. 2015) ("Pursuant to the *Erie* doctrine, '[a] federal court sitting in diversity must apply state substantive law and federal procedural law.'" (quoting *Chamberlain v. Giampapa*, 210 F.3d

154, 158 (3d Cir. 2000)); *Bernard v. Cosby*, 1:21-cv-18566, 2023 U.S. Dist. LEXIS 192, at \*26 (D.N.J. Jan. 3, 2023) ("Federal courts sitting in diversity apply state substantive law, but federal procedural law." (citing *Schmigel*, 800 F.3d at 119); *Devin Dalessio Trucking, LLC v. Progressive Corp.*, Civil Action No. 22-378, 2022 U.S. Dist. LEXIS 201825, at \*6 n.2 (W.D. Pa. Nov. 7, 2022) ("A federal court sitting in diversity must apply state substantive law and federal procedural law." (citing *Chamberlain v. Giampapa*, 210 F.3d 154, 158 (3d Cir. 2000) (citation omitted))); *Howmedica Osteonics Corp. v. Howard*, Case No. 19-19254, 2022 U.S. Dist. LEXIS 196746, at \*16 (D.N.J. Oct. 28, 2022) ("Under the Erie doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." (citing *Gasperini v. Center for Humanities*, 518 U.S. 415, 427 (1996)).

As stated above, federal courts employ the "plausibility" standard when determining 12(b)(6) motions to dismiss. Thus, despite Rule 8 requiring only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), the Third Circuit has interpreted the *Iqbal* decision to require the court to "'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Santiago*, 629 F.3d at 130 (quoting *Iqbal*, 556 U.S. at 674, 679). *See also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 n.4 (3d Cir. 2016) (where the court explains, "Although *Ashcroft v. Iqbal* described the process as a 'two-pronged approach,' 556 U.S. 662, 679, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675-79. Thus, we have described the process as a three-step approach. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago*, 629 F.3d at 130)").[8] Thus, the Court

---

[8] The Court also takes note of the opinion in *Oxley v. Sugar Bay Club & Resort Corp.*, 2018 V.I. LEXIS 81 (Super. Ct. May 14, 2018). There, the Virgin Islands Superior Court, under a standard even less demanding than the plausibility standard, determined that a plaintiff should recite the elements of her claim in the complaint:

> Based upon the differences among notice pleading, fact pleading, and the plausibility standard, this Court determines that a complaint need not plead facts to support each element of a claim in order to adequately allege facts that put an accused party on notice or to 'show[] the pleader is entitled to relief['] under V.I. R. Civ. P. 8(a)(2). But, a complaint should provide factual allegations sufficient to advise the responding party of the transaction or occurrence on which the claim is based and identify the claim, reciting its elements, so as to enable the defendant to respond intelligently and to enable the Court to determine on a motion to dismiss under V.I. R. Civ. P. 12(b)(6) whether the claim is adequately pled. Additionally, considering the policy of the Supreme Court of the Virgin Islands requiring the Superior Court to conduct a *Banks* analysis to determine the applicable common law when confronted with an issue of

sets forth the elements necessary to establish the claims of negligence and intentional tort to determine whether Plaintiffs' complaint can withstand Defendants' challenges.

### 1. Negligence

The Supreme Court of the Virgin Islands has established the elements for a claim of negligence in the Virgin Islands, which include: "'(1) a legal duty of care to the plaintiff, (2) a breach of that duty of care by the defendant (3) constituting the factual and legal cause of (4) damages to the plaintiff.'" *Coastal Air Transport v. Royer*, 64 V.I. 645, 651 (2016) (quoting *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (2014) (other citations omitted)).

### a. Count I -- Defendant Flat Cay

Plaintiffs allege that Flat Cay "had a duty to its customers to keep their customers safe." Compl. at ¶ 34. As this Court has noted, "generally, there is no duty to protect others from the criminal activities of third persons." *Vanderwall v. Marriott Ownership Resorts (St. Thomas)*, Civil No. 2012-84, 2013 U.S. Dist. LEXIS 117764, at *27 (D.V.I. Aug. 20, 2013).[9] Nonetheless, the *Vanderwall* court opines that, "[e]ven if [said Defendant] did not initially owe any duty to the Vanderwalls, it is plausible to infer that once [said Defendant] hired a loss prevention officer, it voluntarily undertook the duty of protecting its patrons from criminal activity and more specifically, theft." *Id.* at *29. However, considering the next element of a claim for negligence, the *Vanderwall* court then finds that the plaintiffs

> do not allege facts supporting their bare assertion that MORI-STT failed "to take reasonable steps" to ensure their safety. They do not allege facts supporting their bare assertion that MORI-STT "had reasonable cause to anticipate criminal acts." The above-quoted portions of paragraphs 34 through 36 are conclusory statements and formulaic recitations of an element of a negligence claim. As such, the statements are not entitled to the assumption [of] truth. *See generally, Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir.

---

common law that has not yet been adopted by the Supreme Court of the Virgin Islands, in order to enable the Superior Court to recognize a potential *Banks* issue and order the parties to brief it, this Court underscores that a complaint should recite the elements of a common law claim so as to make clear the legal theory presented, given that elements among common law claims of the same name may vary.

*Id.* at *10-11 (footnotes omitted).

[9] In *Vanderwall*, the Court considered a claim similar to the one presented here, where guests of a hotel claimed theft by the hotel's security officer (who was subsequently criminally charged with the theft and pleaded guilty). *Vanderwall*, 2013 U.S. Dist. LEXIS 117764, at *3-4.

> 2009) (stating that a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.")

*Id.* at *31.

Like the *Vanderwall* court, the Court here may infer that, by hiring a security guard, Defendant Flat Cay undertook a duty to provide security against criminal activity to its guests. As the Court discusses *infra*, a claim sounding in negligence based upon a voluntary undertaking of a duty requires a showing of physical harm, that the undertaking increased the risk of the physical harm, and reliance upon such undertaking. Nowhere in their complaint do Plaintiffs allege any physical harm or any increased risk of harm other than the incident involving Plaintiff Williams' wallet. In the absence of these facts, any claim for negligence based upon a voluntary undertaking of a duty must fail.

In their opposition to Flat Cay's motion, Plaintiffs explain that their claim for negligence against Flat Cay is based upon the theories of vicarious liability and *respondeat superior*. ECF No. 32 at 5-10. These theories impose liability upon a principal for the negligence of his agent and upon an employer for the negligence of his employee acting within the scope of his employment. *See, e.g., Clendinen-Phipps v. Caribbean Leasing & Eco Transp., LLC*, Civil No. ST-17-CV-281, 2020 VI SUPER 4 (Jan. 10, 2020) (where the court, upon a motion for reconsideration, grants the motion to correct a point of law, but denies relief from its prior decision granting summary judgment in favor of one defendant as to vicarious liability, explaining that the "Amended Complaint only explicitly asserts that CLET is liable under the doctrine of *respondeat superior*" and not vicarious liability).[10] Plaintiffs argue that

---

[10] Neither of these theories of liability are specifically pled in the Complaint nor are these theories patently clear from the face of the complaint. "A pleading should not be drafted in a manner which requires the Court or the opposing party to guess as to its nature." *Henry v. Hovensa, LLC*, SX-15-CV-568, 2016 V.I. LEXIS 55, at *13 (Super. Ct. May 19, 2016). Again, the Court highlights that, even though the Virgin Islands courts have adopted a standard of notice pleading that is lower than the federal "plausibility" standard (*see supra* at 6-7 n.8), the *Clendinen-Phipps* court reiterates that claims must be specifically pled to give fair notice to the defendant:

> While this Court agrees that vicarious liability is not a cause of action, vicarious liability must nonetheless be pled in order to give a defendant fair notice, enabling the defendant to respond intelligently to the complaint. And, though Clendinen-Phipps suggests that the Amended Complaint pleads two theories of relief — vicarious liability based upon a principal-agent relationship and vicarious liability based upon a master-servant relationship, or *respondeat superior* — the Amended Complaint only explicitly asserts that CLET is liable under the doctrine of *respondeat superior*."

*Clendinen-Phipps*, 2020 VI SUPER 4 at *P8 (footnotes omitted).

the complaint clearly alleges that Hatchett was employed by Flat Cay and that Hatchett was acting within the scope of his employment when he allegedly took money from Plaintiff Williams' wallet. ECF No. 32 at 9, citing Compl. at ¶¶ 6, 15, and 16. However, as the Court finds herein, Plaintiffs have not alleged any negligent conduct on the part of Hatchett, only intentional acts. Thus, no liability for negligence can be imputed to Flat Cay based upon the theory of *respondeat superior*.[11]

The portion of the Complaint denominated Count I more specifically states: "The actions of Defendant, FLAT CAY MANAGEMENT, constitute negligent hiring, training and supervision of its employee, defendant SHAQUORI HATCHETT." Comp. at ¶ 39.[12] Currently, under Virgin Islands law,

> to state a claim for negligent hiring, Plaintiff must plausibly plead: "(1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's actual or constructive knowledge of such incompetence; (4) the employee's act or omission causing plaintiffs injuries; and (5) the employer's negligence in hiring or retaining the employee was the proximate cause of the plaintiff's injuries.

*Canton v. Government of the Virgin Islands.*, Civil No. SX-13-CV-42, 2016 V.I. LEXIS 31, at \*14-15 (Super. Ct. Apr. 4, 2016) (quoting *Bell v. Radcliffe*, Case No. ST-CV-392, 2014 V.I. LEXIS 119, at \*31-33 (Super. Ct. Apr. 30, 2014) (internal citations omitted)); *see also Miga v. Jamis*, Civil No. 2019-85, 2020 U.S. Dist. LEXIS 213133, at \*4-6 (D.V.I. Nov. 16, 2020) (citing *Bell* and noting the *Banks* analysis therein).

Flat Cay argues that Plaintiffs fail to include the elements of the claim within the body of the complaint. *See* ECF No. 15 at 6. In addition to such failure, Flat Cay contends that Plaintiffs fail to allege that Hatchett was "incompetent to work as a security guard and that

---

[11] Because Plaintiffs allege an employer-employee relationship between the defendants and not principal-agent, only the theory of liability based upon *respondeat superior* would be applicable, not vicarious liability.

[12] Any claim for premises liability, as alluded to in their allegation that "Defendant created and/or maintained [a] dangerous condition and environment on their premises . . .." " Compl. at ¶ 35, is subsumed by Plaintiffs' claim of the negligent hiring of Hatchett. *See, e.g., Akopyan v. Got Guard*, 20STCV12281, 2021 Cal. Super. LEXIS 92423, at \*4-5 (June 2, 2021) (where the court explains that premises liability is not limited to a physical condition of the premises stating, "In this respect, whether a property owner acted negligently in hiring aggressive employees would be categorized as a premises liability claim."). Plaintiffs seemingly acknowledge this principle in the remainder of their allegation at paragraph numbered 35 that the liability is based upon Flat Cay's "hiring and maintain [sic] the employment of Defendant HATCHETT as a security guard when it knew or should have known that Defendant had committed crimes against Plaintiff WILLIAMS." Compl. at ¶ 35.

FLAT CAY had actual or constructive knowledge of HATCHETT's incompetence when it hired him" and that such "alleged negligent hiring caused the alleged theft, mental anguish and loss of enjoyment of life purportedly sustained by the Plaintiffs." *Id*. Said Defendant further avers that the "Complaint fails to allege facts explaining how HATCHETT's training was deficient, and that FLAT CAY was on notice of such deficiencies. As with the negligent hiring claim, the Complaint fails to allege any facts supporting a finding that the alleged deficient training caused the claimed damages" and that the "Complaint fails to allege any facts as to how FLAT CAY's supervision of HATCHETT was deficient and how the deficient supervision caused the alleged damages." *Id*. at 6-7.

Plaintiffs respond that the allegations contained in paragraphs numbered 28 and 29 of the Complaint, namely, that, despite Flat Cay's actual knowledge of the criminal conduct of Hatchett, Flat Cay allowed Hatchett to continue working, "provide sufficient allegations to support Plaintiffs' claim that of negligent hiring, training and supervision. They demonstrate that Defendant, Flat Cay, was conducting an activity, i.e. running a hotel, through servants and was negligent in the employment of an improper person in work involving risk of harm to others." ECF No. 32 at 11-12, citing *Vanderwall*, 2013 U.S. Dist. LEXIS 117764, at *10.

Notwithstanding Plaintiffs' argument, the Court agrees with Flat Cay that nowhere in the Complaint are any allegations to support or demonstrate how Flat Cay was negligent in hiring Hatchett, the nature of Hatchett's training or supervision and how Flat Cay was negligent in conducting such training or supervision, and how such alleged negligence in hiring and/or training "caused" Plaintiffs' alleged damages. The absence of such allegations is analogous to the complaint considered by the *Vanderwall* court:

> The plaintiffs do not allege any specific facts as to Percival's purported lack of fitness or qualification. They do not allege any specific facts as to MORI-STT's hiring, retention, or supervisory failures or how such purported failures tie into whether or not Percival should have been permitted to assist owners with problems with their safes. There is no factual allegation that points to some conduct that might possibly have given MORI-STT actual or constructive knowledge that Percival would steal from the plaintiffs. Further, there is no factual allegation which even gives rise to MORI-STT's knowledge that Percival might succumb to criminal opportunity while assisting a timeshare owner with the owner's safe. Indeed, the plaintiffs fail to allege any facts supporting the "incompetence" and "knowledge" elements required for the asserted

> theories of liability. As such, the plaintiffs fail to state a claim for negligent
> hiring, retention, and supervision.

*Vanderwall*, 2013 U.S. Dist. LEXIS 117764, at *34-35. Construing the complaint in a light most favorable to Plaintiffs, the Court finds that Plaintiffs fail to state claims for negligent hiring, training and supervision, but arguably have stated a claim for negligent retention only; although, as the Court has observed, the complaint does not precisely state when Defendant Flat Cay became aware of Hatchett's alleged criminal conduct, nor does it state the length of Plaintiffs' stay or the length of Hatchett's continued employment after Flat Cay's purported knowledge.

Within the section titled Count I, Plaintiffs state that "[a]s a result of the conduct of Defendant, Plaintiffs have suffered emotional damages, mental anguish, and loss of enjoyment of life, and will continue to suffer these damages into the future . . . ." Compl. at ¶ 40. This allegation appears to assert, or at least hint at, a claim for negligent infliction of emotional distress.[13] Although not yet decided by the Virgin Islands Supreme Court, the Superior Court of the Virgin Islands has adopted a rule that does not require the showing of physical harm that results from the emotional distress as outlined in RESTATEMENT (SECOND) OF TORTS § 313 and previously required in the Virgin Islands:

> This Court also agrees with the growing minority and the Virgin Islands Courts that have abandoned the physical injury and "zone of danger" requirements. Physical injury and presence in the "zone of danger" should not be required for recovery, but should be allowed as evidence that a plaintiff has suffered a severe or serious emotional injury. Hence, this Court finds that the test for individual recovery outlined in *Donastorg* is the soundest rule for the Virgin Islands.

---

[13] Insofar as Plaintiffs attempt to assert claims for negligent undertaking of a duty, negligence based upon *respondeat superior*, and/or negligent infliction of emotional distress in addition to their negligent hiring/supervision/training/retention claim, the Court instructs them that combining all these separate claims into one single count under the heading negligence is improper and is a type of "shotgun pleading" that violates Fed. R. Civ. P. 8(a)(2). *See, e.g., Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) ("The third type of shotgun pleading is one that commits the sin of not separating into a different count each cause of action or claim for relief.") *cited in Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 and n.3 (E.D. Pa. 2017) (where the court notes that the "United States Court of Appeals for the Eleventh Circuit has articulated the bulk of existing law in this area [i.e., shotgun pleadings]" and that "district courts within the Third Circuit often cite to the Eleventh Circuit for this law").

> For an individual to recover, to prevail on a claim of negligent infliction of emotional distress under a theory that the plaintiff was the direct victim of a defendant's negligent conduct, a plaintiff must prove: (1) that the defendant owed the plaintiff a duty of care to ensure the plaintiff does not suffer serious or severe emotional injury, which duty either arose by contract or was imposed as an independent legal obligation; (2) that the defendant breached its contractual or legal obligation, i.e. its duty; and (3) that, as a direct and proximate result of defendant's breach, the plaintiff suffered a serious or severe emotional injury.

*Diaz v. Ramsden*, 67 V.I. 81, 94 (Super. Ct. 2016) (quoting *Donastorg v. Daily News Publishing Co., Inc.*, 63 V.I. 196, 314 (Super. Ct. 2015) (footnote omitted)). Despite this change in the elements necessary to state a claim for the tort in the Virgin Islands, the Court finds that Plaintiffs fail to allege a plausible claim because they fail to specify or describe the "severe" emotional distress suffered by Plaintiffs as a result of Defendant Flat Cay's actions.[14] Plaintiffs' only allegation that appears to describe their emotional distress states that they "were terrified and could not sleep due to the security guard, Defendant, HATCHETT, being allowed to still work there while having access to their room." Compl. at ¶ 32. The Court finds Plaintiffs' claimed emotional injury, as stated, does not constitute sufficiently serious or severe injury to merit recovery for a claim of negligent infliction of emotional distress. *See, e.g., Smith v. Law Offices of Karin A. Bentz, P.C.*, Civil No. ST-17-CV-116, 2017 V.I. LEXIS 111, at *15 (V.I. Super. Ct. July 20, 2017) (where the court found "migraine/headaches, stress and other ailments" insufficient to state a claim for negligent or intentional infliction of emotional distress).

Based upon the forgoing, the Court finds that as currently pled, Plaintiffs fail to state a claim in Count I of their Complaint. However, the Court will allow Plaintiffs to replead their claims for negligent retention and negligent infliction of emotional distress, albeit in separate

---

[14] In response to Defendant Hatchett's charge that the complaint is unclear regarding which Plaintiffs assert which claims against him, ECF No. 13 at 1 and n.1, Plaintiffs maintain that certain allegations "refer to Plaintiffs in the plural, obviously stating the allegations contained in those paragraphs in [sic] as to all Plaintiffs, including the minor Plaintiffs whose claims have been brought by their mother, Carolyn DeWindt Williams." ECF No. 33 at 2-3. However, nowhere in the Complaint do Plaintiffs provide specific facts or allegations of conduct directed toward the minor plaintiffs or describe the emotional distress or other injury and resulting damages suffered by each Plaintiff. *See also* notes 1 and 4, *supra*.

counts, and provided they set forth the nature and extent of each Plaintiff's injury, individually.

### b. Count II -- Defendant Shaquori Hatchett

Hatchett contends that the two claims asserted against him are "too vague to be actionable." ECF No. 13 at 1-2. Regarding the negligence claim in Count II, Hatchett states that "Plaintiffs fail to identify: the theory of negligence alleged, which Plaintiffs assert this claim against Mr. Hatchett, and, if multiple Plaintiffs assert this claim, the factual predicate for each discrete claim." *Id.* (footnote omitted).

In response, Plaintiffs defend their pleading by citing Rule 8 of the Federal Rules of Civil Procedure and maintaining that their complaint provides adequate "notice" of their claims and the grounds upon which their claims rest. ECF No. 33 at 4-5. They then aver that the allegations adequately allege that Hatchett, as Flat Cay's hired security guard, "had a duty to protect Plaintiffs from foreseeable harm, including from himself." *Id.* at 8. They first predicate such duty as "third-party beneficiaries of Hatchett's employment contract with Flat Cay. *Id.*

Hatchett counters, in his reply:

First Plaintiffs imply, without any citation to law, that Mr. Hatchett owed them a duty of care because they "were third party beneficiaries of the employment agreement between the Defendants." Opp. at 8. Plaintiffs here appear to suggest the existence of a duty arising under contract law principles as opposed to tort law principles. Plaintiffs still do not identify any negligent acts by Mr. Hatchett pleaded in the Complaint that served to breach this purported duty.

ECF No. 39 at 2. The Court agrees with Hatchett that, even if Plaintiffs could show that Hatchett owed them a duty of care arising from his employment agreement with Defendant Flat Cay, Plaintiffs fail to identify in the Complaint the negligent acts, as opposed to intentional acts, by Hatchett that allegedly breached this purported duty.

Plaintiffs argue, in the alternative to their contract theory, that, when Hatchett asked for Plaintiff "Williams' identification and [took] his wallet to retrieve the identification," he "voluntarily assumed a duty to provide security to Mr. Williams and his possessions that

were within Defendant[] Hatchett's control." ECF No. 33 at 8.[15] In support of this basis of liability Plaintiffs cite Section 323 of the RESTATEMENT (SECOND) OF TORTS. *Id.* at 8-9. This section provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if
>
> (a) his failure to exercise such care increases the risk of such harm, or
>
> (b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323.[16]

If, as Plaintiffs allege, that it was by asking Plaintiff Williams for his ID and taking his wallet that Hatchett "assumed a duty" to Plaintiff Williams, ECF No. 33 at 8, the Court agrees with Hatchett that "Plaintiff[s] can point to no allegations in the Complaint where Mr. Hatchett undertook a[] duty as to Plaintiff Carolyn Dewindt-Williams or the two minors or that explain how he breached that duty to them." ECF No. 39 at 3. And, also, even if such action created such a duty to Plaintiff Williams, said Defendant maintains that said Plaintiff fails to allege a plausible negligence claim because "Plaintiff still fails to allege any negligent acts by Mr. Hatchett that served to breach this purported duty, only intentional criminal conduct." *Id.* at 3 n.1.

Despite Plaintiffs' citations to cases that purportedly support their position, *see* ECF No. 33 at 9-10, the Court finds the authorities so cited are outdated, apply principles followed

---

[15] As shown by Plaintiffs' discussion in their opposition, ECF No. 33, none of the allegations in the Complaint sufficiently put Defendant Hatchett on notice that they are claiming a voluntarily assumed duty, which is quite different from a duty imposed by law based upon the relationship of the parties. Plaintiffs rely upon Fed. R. Civ. P. 8 for their "barebones" pleading. However, even given Rule 8, the United States Supreme Court has imposed the "plausibility" standard for pleadings. In addition, in the Virgin Islands, which has adopted a standard even less demanding than the plausibility standard, claims must be specifically pled to give fair notice to the defendant. *See, e.g., Clendinen-Phipps*, 2020 VI SUPER 4 at *P8 ("While this Court agrees that vicarious liability is not a cause of action, vicarious liability must nonetheless be pled in order to give a defendant fair notice, enabling the defendant to respond intelligently to the complaint.").

[16] This section of the Restatement has been adopted by the Superior Court of the Virgin Islands in *Gerald v. R.J. Reynolds Tobacco Co.*, 67 V.I. 441, 472 (Super. Ct. 2017) (where the court, after conducting a *Banks* analysis, "concludes that Section 323 of the Second Restatement is the soundest rule for the Virgin Islands. The Court's adoption of Section 323 fosters consistency in the territory's application of this special duty rule and promotes fairness by endorsing an approach uniformly supported in other jurisdictions.")

in other jurisdictions, or involve facts that are not present in this case; thus, the holdings therein are not controlling in this jurisdiction or may be disregarded by this Court. Even if such caselaw were relevant and applicable, Plaintiffs still do not describe or explain any negligent conduct on the part of Hatchett. They simply summarize with a legal conclusion:

> Here, Plaintiffs were guests of the hotel and on the hotel premises where Defendant, Hatchett was the security guard present for the purpose of supplying security. Thus, he had a duty to supply security to them. However, the manner in which that security was provided was negligently [sic], at best; intentionally tortuous [sic], at worst, insufficient.

*Id*. at 10.

The Court was unable to locate any local caselaw directly on point regarding this issue, but other courts who have considered it have held that "negligence and intent are mutually exclusive grounds for liability." *Ryan v. Napier*, 245 Ariz. 54, 60 (2018). The *Ryan* court illustrates: "[I]f a defendant acts with the intent to cause a harmful or offensive touching (battery), that same act cannot constitute negligence . . . As previously explained, an intentional act cannot also constitute negligence." *Id*. at 60-61. *See, also, e.g., Dixon v. City of St. Albans*, Civil Action No. 2:20-cv-00379, 2020 U.S. Dist. LEXIS 212599, at *8 (S.D. W. Va. Nov. 13, 2020) ("[I]t is well established that intentional acts cannot form the basis of a claim for negligence. *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citing *Stone*, 32 S.E.2d at 748 (noting that 'intentional acts are not encompassed by general negligence principles')); *Weigle v. Pifer*, 139 F. Supp. 3d 760, 780 (S.D. W. Va. 2015) ("'A mere allegation of negligence does not turn an intentional tort into negligent conduct.'") (citations omitted)); *Hicks v. City of Portland*, CV 04-00825-AS, 2006 U.S. Dist. LEXIS 101049, at *46 (D. Ore. Sept. 13, 2006) ("In Oregon, however, evidence of intentional conduct may not support a claim for negligence. *See Kasnick v. Cooke*, 116 Ore. App. 580, 583, 842 P.2d 440 (1992) ('[P]laintiff may not allege facts that necessarily would constitute an intentional tort but then assert that he can prevail by proving only negligence.'). When a defendant's conduct is willful and intentional, it is no longer negligence. *Denton v. Arnstein*, 197 Ore. 28, 45, 250 P.2d 407 (1952)."). It appears that the courts of the Virgin Islands would follow this line of decisions. Although not directly on point, the Superior Court of the Virgin Islands states, in evaluating a negligent infliction of emotional distress claim, "Intentional or deliberate conduct is not

necessarily at issue." *Arno v. Hess Corp.*, 71 V.I. 463, 508-09 (Super. Ct. 2019) (citing *Bell v. State*, 406 A.2d 909, 915 (Md. 1979) ("'Intentional' and 'negligent' are mutually exclusive.")).

Upon review of the elements of the claim and the Complaint herein, in addition to finding the absence of any alleged negligent acts attributed to Hatchett, the Court finds no allegations regarding how Hatchett's conduct "increased the risk of harm" to Plaintiffs or Plaintiffs' reliance upon his alleged "undertaking." Plaintiffs specifically rely upon Section 323 of the Restatement (Second) of Torts. *See* ECF No. 33 at 8-9. First, this section imposes liability for "physical harm" only, not financial or emotional. *See, e.g., Atlantic States Ins. Co. v. Copart, Inc.*, No. 5:22-cv-1177, 2023 U.S. Dist. LEXIS 803, at *5 (E.D. Pa. Jan. 4, 2023) ("'Physical harm' is defined by the Restatement as the physical impairment of the human body, or of land or chattels. *Id.* § 7(3)."); *Carlotti v. Employees of GE Fed. Credit Union No. 1161*, 717 A.2d 564, 567 (Pa. Super. 1988) ("We have been unable to find any binding decision that would impose a duty under § 323 where the harm alleged is merely financial. Indeed, the existing cases would suggest that economic harm is not a basis for recovery."), *cited in Sonecha v. New Eng. Life Ins. Co.*, 124 Fed. App'x 143, 146 (3d Cir. 2005) and *Atlantic States Ins. Co. v. Copart, Inc.*, No. 5:22-cv-1177, 2022 U.S. Dist. LEXIS 154758, at *10 (E.D. Pa. Aug. 29, 2022)); *see also Bell v. Radcliffe*, 2014 V.I. LEXIS 119, at *29 (Super. Ct. Apr. 30, 2014) (where the Superior Court of the Virgin Islands, after conducting a *Banks* analysis, adopts certain sections of the Restatements of Torts, namely, RESTATEMENT (SECOND) OF TORTS § 364 (1965); RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 54 (2012)) (citations omitted in the original and footnotes omitted) and RESTATEMENT (THIRD) OF TORTS: PHYS. & EMOT. HARM § 4 and cmt. b (defining *physical harm* and commenting: "The definition of bodily harm is meant to preserve the ordinary distinction between bodily harm and emotional harm")). Plaintiffs fail to identify the physical harm that resulted from Defendant Hatchett's alleged conduct. Second, Plaintiffs fail to allege how Hatchett's conduct *increased* the risk of such harm. Third, the Complaint is devoid of any allegations of Plaintiffs' reliance upon such undertaking by Hatchett. Consequently, the Court finds that Plaintiffs fail to state a claim for the negligent performance of a voluntary undertaking.

Plaintiffs also appear to allege negligent infliction of emotional distress against Hatchett. *See* Compl. at ¶ 43. Again, the Court finds that Plaintiffs fail to describe any negligent conduct attributable to Hatchett. Furthermore, the Court has found, *supra*, regarding the same claim asserted against Defendant Flat Cay, that Plaintiffs fail to support this claim with facts sufficient to state a plausible claim because Plaintiffs' claimed emotional distress was not "serious" or "severe" enough to maintain the claim. Because Plaintiffs' Complaint is completely devoid of any allegations of negligent acts by Hatchett, the Court will dismiss this count in its entirety.

### 2. Intentional Tort

#### a. Count III -- Defendant Flat Cay

Plaintiffs allege that the "conduct of Defendant FLAT CAY MANAGEMENT constituted an intentional tort, as said Defendant knew that Defendant HATCHETT had robbed Plaintiff Williams' money, and credit card information yet permitted Defendant HATCHETT to continue to have access to Plaintiff's [sic] room as the security guard for the hotel." Compl. at ¶ 45. Said Defendant asserts that "[t]he Complaint fails to allege any facts to support a finding that FLAT CAY intended to harm Plaintiffs by its failure to restrict HATCHETT's access to Plaintiffs' room after the alleged theft in the lobby." ECF No. 15 at 7-8. It continues: "Furthermore, Plaintiffs' [sic] fail to provide any factual allegations as to how FLAT CAY's failure to restrict HATCHETT's access after the alleged theft caused Plaintiffs to suffer emotional damages, mental anguish, and loss of the enjoyment of life." *Id.* at 8. In their opposition, Plaintiffs counter: "Plaintiffs have alleged a cause of action for intentional infliction of emotional distress." ECF No. 32 at 12.[17]

The Superior Court of the Virgin Islands, after conducting a *Banks* analysis, concluded in *FirstBank of Puerto Rico v. Prosser*, 69 V.I. 16 (Super. Ct. 2015), "that RESTATEMENT (SECOND) OF TORTS § 46 best reflects the common law of this jurisdiction." *Id.* at 24. The *Prosser* court then details,

> Under section 46, the tort of intentional infliction of emotional distress is committed when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. ..." RESTATEMENT

---

[17] No other specific intentional tort against Defendant Flat Cay is apparent from the face of the Complaint.

> (SECOND) OF TORTS, § 46; *see also Moolenaar v. Atlas Motor Inns, Inc.*, 616 F.2d 87, 17 V.I. 623 (3d Cir. 1980). The actor's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." RESTATEMENT (SECOND) OF TORTS, § 46, comment d.

*Id.* As Flat Cay states in its reply to Plaintiffs' opposition to its motion, the Complaint "fails to allege how HATCHETT merely having access to the room caused Plaintiffs to suffer emotional stress or the nature or extent of the claimed distress." ECF No. 38 at 5. The only allegation in the complaint supporting this claim, other than the single allegation of Plaintiffs being "terrified" at Hatchett's continued employment in paragraph numbered 32 of the Complaint, appears at paragraph numbered 46: "As a result of the conduct of Defendant, Plaintiffs have suffered, and will continue to suffer in the future, emotional damages, mental anguish and loss of enjoyment of life; and, their money that was in Plaintiff WILLIAMS' wallet." Compl. at ¶ 46. Not only does the Court agree with Flat Cay that Plaintiffs fail to allege facts showing how Defendant Hatchett's continued employment by Defendant Flat Cay "caused" Plaintiffs emotional distress, but also that Plaintiffs fail to allege the nature and extent of their claimed distress. In addition, Plaintiffs fail to allege the nature and extent of the distress claimed by each Plaintiff. Plaintiffs allege only that they "were terrified and could not sleep due to the security guard, Defendant, HATCHETT, being allowed to still work there while having access to their room." Compl. at ¶ 32. The Court finds Plaintiffs' claimed emotional injury, as stated, without more specificity as to the nature and extent of the injury suffered by each Plaintiff does not constitute sufficiently serious or severe injury to merit recovery for a claim of infliction of emotional distress. *See, e.g., Smith v. Law Offices of Karin A. Bentz, P.C.*, Civil No. ST-17-CV-116, 2017 V.I. LEXIS 111, at *15 (V.I. Super. Ct. July 20, 2017) (where the court found "migraine/headaches, stress and other ailments" insufficient to state a claim for negligent or intentional infliction of emotional distress).

Moreover, as outlined above, the elements include extreme or outrageous conduct that causes the claimed severe emotional distress. The Court concludes, as a matter of law, that the alleged conduct of the continued employment of Defendant Hatchett as a security guard and his alleged "access to Plaintiffs' room" does not rise to the level of extreme and outrageous. *See, e.g., Press v. United Airlines, Inc.*, Civil Action No. 3:11-cv-2265, 2012 U.S. Dist.

LEXIS 62031, at *28 (M.D. Pa. May 3, 2012) ("Whether conduct is outrageous is, in the first instance, a legal question for the court." (citing *Cavallaro v. Pozzi*, 28 A.D.3d 1075, 814 N.Y.S.2d 462, 465 (App. Div. 2006)); *Gyda v. Temple Univ.*, Civil Action No. 98-1374, 2000 U.S. Dist. LEXIS 7099, *28 (E.D. Pa. May 23, 2000) ("[I]t is a question for the court whether as a matter of law the conduct alleged reaches the requisite level of outrageousness." (citing *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir. 1988)).[18] In light of these findings, the Court will dismiss this count.

### b. Count IV[19] -- Defendant Shaquori Hatchett

Hatchett declares in his motion that, regarding the "cause of action for 'intentional tort' . . . it is impossible to decipher what cause(s) of action each Plaintiff purports to assert and what factual allegations correspond to each." *Id.* at 2. The Court agrees that the complaint is unclear regarding which Plaintiff asserts what cause of action and the specific factual allegations that correspond to each cause of action.[20] At the same time, Count IV identifies the following causes of action: "The conduct of Defendant SHAQUORI HATCHETT constituted the intentional torts of assault, robbery, theft and defamation, per se." Compl. at ¶ 48. The Court considers each listed tort, in turn.[21]

---

[18] The Court distinguishes its determination from the claim of Defendant Flat Cay that the court in *Hiss v. Commercial Security, LLC, Inc.*, Civil No. SX-15-CV-104, 2016 V.I. LEXIS 59 (Super. Ct. Apr. 8, 2016) "found that as a matter of law, a claim IIED claim cannot be stated based upon an employer's decision as to whether to terminate an employee." ECF No. 38 at 5. Said Defendant, however, misconstrues and misapplies the language in *Hiss* where the court states,

> The Superior Court has held that "an employer's exercise of such discretion in dismissing an employee does not rise to the level of conduct so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."

*Hiss*, 2016 V.I. LEXIS 59, at *11 (quoting *Hodge v. Daily News Publ. Co., Inc.*, 52 V.I. 186, 198-199 (V.I. Super. Ct. 2009)). The *Hiss* court, here, addresses the claim presented to it, namely, the terminated employee alleging an intentional infliction of emotional distress claim based solely upon the fact that he was terminated. It is under that type of scenario that the *Hiss* court favorably quotes the language found in *Hodge*. The court was not speaking to the claim before this Court where the plaintiffs are third-parties to the employment contract and are alleging that the employer's failure to terminate resulted in intentional infliction of emotion distress.

[19] Count IV is mistitled as a second Count III. *See* Complaint at 6.

[20] The Court has pointed out the fact that no allegations appear in the complaint that name, identify, or otherwise reference the alleged minor plaintiffs, Trebor Dewindt-Williams and Chynna Dewindt-Williams. *See* notes 1 and 4, *supra*.

[21] The Court reiterates its comments in note 13, *supra*, that combining three or four separate claims into one count is improper.

### i. Assault

The Virgin Islands has recognized the elements of this tort as expressed in RESTATEMENT (SECOND) OF TORTS, § 21:

> In order to prevail on a claim for the intentional tort of assault, a plaintiff must prove that: (1) the defendant intentionally caused harmful or offensive contact with the person of the plaintiff or a third person, or an imminent apprehension of such contact; and (2) the plaintiff is put in such imminent apprehension. *See Ho v. Vu*, 2015 V.I. LEXIS 80, at *4 (V.I. Super. Ct. July 16, 2015) (conducting *Banks* analysis and citing RESTATEMENT (SECOND) OF TORTS § 21); *Canton v. Gov't of the Virgin Islands*, 2016 V.I. LEXIS 31, at *6 (V.I. Super. Ct Apr. 4, 2016).

*Burke v. Treasure Bay V.I. Corp.*, Civil No. SX-16-CV-121, 2016 V.I. LEXIS 161, at *11 n.4 (Super. Ct. Oct. 6, 2016). Here, nothing in the Complaint can be construed to allege a "harmful or offensive contact." *Contact* in this provision of the Restatement has been interpreted to mean "bodily contact." RESTATEMENT (SECOND) OF TORTS, § 21, comment f ("In order to become liable under the rule stated in this Section, it is necessary that the actor intend to inflict a harmful or offensive *bodily* contact upon the other or a third person or put him in apprehension of such contact. Unless he acts with such intent, the actor is not liable for an assault although his conduct creates an unreasonable risk of causing such an apprehension to another and although such apprehension is actually caused." (emphasis added)).[22] Even if Plaintiffs' allegation that Hatchett threatened Plaintiff Williams "that 'he has people that can take care of him,'" Compl. at ¶ 33, is taken as true, this allegation without more does not suggest, and Plaintiffs fail to allege specifically, that they and/or Plaintiff Williams, in particular, were in *imminent* apprehension of bodily contact. Consequently, the Complaint fails to allege a plausible claim for the intentional tort of assault, as it is currently pled. The Court will allow Plaintiff Williams to replead this claim.

### ii. Robbery/theft

While Plaintiffs identify their claim as robbery and/or theft, this Court has noted that "neither the courts of the Virgin Islands nor Virgin Islands law has [sic] recognized the tort of

---

[22] Plaintiffs allege that Defendant Hatchett "attempted to wake [Plaintiff Williams] up." Compl. at ¶ 15. Nothing in this allegation or the rest of the complaint claims, suggests, or implies that this attempt involved harmful or offensive bodily contact.

civil theft separate from the tort of conversion . . . ." *Cyril v. Pereira*, Civil Action No. 2016-0017, 2022 U.S. Dist. LEXIS 125067, at *5 n.3 (D.V.I. July 14, 2022) (citing *Chaput v. Scafidi*, 66 V.I. 160, 185 (Super. Ct. 2017)). Hence, the Court will treat the claim as one for conversion.

The Superior Court of the Virgin Islands discusses the tort of conversion in *Isaac v. Crichlow*, 63 V.I. 38 (Super. Ct. 2015). In the absence of a ruling by the Virgin Islands Supreme Court and after conducting a *Banks* analysis, the *Isaac* court opined:

> RESTATEMENT (SECOND) OF TORTS § 222A reflects the common law of this jurisdiction. The Restatement defines conversion as "an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." RESTATEMENT (SECOND) OF TORTS § 222A.

*Isaac*, 63 V.I. at 58-59. Stated in a slightly different way: "'The elements of conversion require that a defendant be proved to have "intentionally or wrongfully exercise[d] acts of ownership, control or dominion over *personal property* to which he has no right of possession at the time . . ..'" *Franken v. Sisneros*, Case No. ST-15-CV-88, 2016 V.I. LEXIS 248, at *8 (Super. Ct. Apr. 18, 2016) (quoting *Ross v. Hodge*, 58 V.I. 292, 308 (V.I. 2013) (emphasis added by the *Franken* court)). Even though Plaintiffs yet again fail to cite the elements of this tort, the Court, accepting the allegations of the complaint as true and drawing all reasonable inferences in favor of Plaintiffs, finds that Plaintiff Williams has pled a plausible claim for conversion against Hatchett and will allow said Plaintiff to replead this cause of action.

### iii. Defamation *per se*

This is the only intentional tort listed in paragraph numbered 48 of the Complaint that is debated by Hatchett and Plaintiffs in their briefs.

> In the Virgin Islands, a claim of defamation requires: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting at least to negligence on the part of the publisher; and (d) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication."

*Kendall v. Daily News Publ. Co.*, 55 V.I. 781, 787 (2011) (quoting RESTATEMENT (SECOND) OF TORTS § 558), *adopted by Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 585 n.10 (2012) ("Applying the three non-dispositive *Banks* factors, we see no reason to depart from our

decision in *Kendall* to follow the approach set forth in the Second Restatement.").[23] Plaintiffs'

claim is for defamation *per se*, meaning, that the alleged defamatory statement is actionable

"irrespective of special harm."[24]

In support of their claim, Plaintiffs argue that their allegation that "Defendant,

HATCHETT called the police alleging Plaintiff WILLIAMS had committed a crime," Compl. at

¶ 21, "establishes, at a minimum, that Defendant[] Hatchett defamed Mr. Williams by falsely

accusing him of crime and that the false accusations were made to the police." ECF No. 33 at

10. Plaintiffs do not state or identify the crime of which Plaintiff Williams was allegedly

accused, merely that Hatchett told police that Williams "had committed a crime." In defense

of this vague allegation, Plaintiffs rely upon the fact that RESTATEMENT (SECOND) OF TORTS §§

570 and 571, do "not require that the slander include a specific crime," ECF No. 33 at 12.

However, the comments to Section 571 indicate that, while the crime need not be specifically

identified, the offense must be identifiable by the language used. RESTATEMENT (SECOND) OF

TORTS § 571, comment c ("It is not necessary that the defamer charge any particular criminal

offense either by name or description, if the words used imply some crime of the type stated

in Clauses (a) and (b).") An actual criminal act must be "charged." *Id*. Here, the allegation that

---

[23] A statement is "defamatory" only "if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." RESTATEMENT (SECOND) OF TORTS § 559.

[24] The Restatement defines *special harm* as "the loss of something having economic or pecuniary value . . . [which] must result from the conduct of a person other than the defamer or the one defamed and must be legally caused by the defamation." RESTATEMENT (SECOND) OF TORTS § 575, comment b (*quoted in Joseph v. Daily News Publishing Co., Inc.*, 57 V.I. 566, 587 (2012)). The *Joseph* court elucidates:

> In essence, this element refers to two general categories of liability-producing statements. First, there are those that the Plaintiff is able to demonstrate caused him special harm. Second, there are those for which Plaintiff need not prove the existence of special harm because they are actionable on their face. This second category clearly begs the question, what makes a defamatory statement actionable on its face, or "actionable *per se*"? The answer to this question depends in part on whether the statement is either a libel or a slander. Specifically, "[o]ral defamation [i.e. slander] is tortious if the words spoken fall within a limited class of cases in which the words are actionable *per se*, or if they cause special damages. Written defamation [i.e. libel] is actionable *per se*." RESTATEMENT (SECOND) OF TORTS § 568 cmt. b. Thus, special damages need only be proven when the statement is slanderous and it does not fall into one of the limited classes of speech which is actionable *per se*. The classes of speech that are actionable *per se* are outlined in RESTATEMENT (SECOND) OF TORTS, §§ 570-574.

*Joseph*, 57 V.I. at 587-88 (footnote omitted). Apparently because they allege defamation *per se,* Plaintiffs make no allegation of special harm or one that could be construed to be an allegation of special harm.

Hatchett told the police that Plaintiff Williams had "committed a crime" standing alone without other facts or allegations describing or implying of what criminal act Plaintiff Williams was accused fails to allege a plausible claim for defamation or slander *per se*.

Additionally, Hatchett maintains that, even if the alleged statement would otherwise constitute defamation, because the alleged statement allegedly was made to law enforcement it was absolutely privileged under RESTATEMENT (SECOND) OF TORTS § 587.[25] *See* ECF No. 39 at 4-5. This section of the Restatement has been adopted by the Virgin Islands Supreme Court. *See Guardian Ins. Co. v. Estate of Knight-David*, Case No. ST-08-CV-189, 2017 V.I. LEXIS 103, at *3 and n.13 (Super. Ct. Apr. 7, 2017) ("The Supreme Court of the Virgin Islands has adopted the absolute privileges stated in §§ 583-592A of the Second Restatement of Torts." (footnote omitted)). As is clear from its plain language, the provision applies to the publication element of the tort. The privilege provided by the section was considered by this Court in *Sprauve v. CBI Acquisitions, LLC*, Civil Action No. 09-165, 2010 U.S. Dist. LEXIS 92604 (D.V.I. Aug. 31, 2010), where the Court states, "The Second Restatement of Torts provides for an absolute privilege that protects statements made to law enforcement in order to initiate a criminal investigation from any claim of defamation." *Id.* at *37. The *Sprauve* court references comment b, noting that the "rule stated in this section applies 'to information given and informal complaints made to a prosecuting attorney or other proper officer preliminary to a proposed criminal prosecution whether or not the information is followed by a formal complaint or affidavit.'" *Id.* at *38 (quoting RESTATEMENT (SECOND) OF TORTS § 587 cmt. b). The Court then found that:

> Defendant's reporting to the Coast Guard of its belief that Plaintiff was operating a boat under the influence constitutes the reporting of a complaint to a "proper officer preliminary to a proposed criminal prosecution." RESTATEMENT (SECOND) OF TORTS § 587 cmt. b (1977). As such, the statement

---

[25] Section 587 provides:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

RESTATEMENT (SECOND) OF TORTS § 587.

*Williams et al. v. Flat Cay Management, LLC, et al.*
Case No. 3:22-cv-0002
Memorandum Opinion
Page 24 of 27

            invokes the absolute privilege that protects it from claims of defamation,
which, in turn, requires dismissal of all of Plaintiff's claims for defamation.

*Sprauve*, 2010 U.S. Dist. LEXIS 92604, at *40-41.

        Similarly, the Court finds here that Hatchett's alleged communication to the police that Plaintiff Williams had committed a crime, even if the alleged statement could be determined to be defamatory, is subject to the absolute privilege provided by RESTATEMENT (SECOND) OF TORTS § 587.[26] Thus, the Court concludes that Plaintiffs fail to state a plausible claim for defamation or defamation *per se* and will dismiss these claims altogether.

        In addition to the intentional torts listed in paragraph 48 of the Complaint, Plaintiffs appear to allege intentional infliction of emotional distress. *See* Compl. at ¶ 49.[27] However, the Court already has found herein that Plaintiffs fail to allege sufficient specific facts to state such a claim against Flat Cay, namely that Plaintiffs' claimed emotional injury, as stated, without more specificity as to the nature and extent of the injury suffered by each Plaintiff does not constitute sufficiently serious or severe injury to merit recovery for a claim of infliction of emotional distress. *See, e.g., Smith v. Law Offices of Karin A. Bentz, P.C.*, Civil No. ST-17-CV-116, 2017 V.I. LEXIS 111, at *15 (V.I. Super. Ct. July 20, 2017) (where the court found "migraine/headaches, stress and other ailments" insufficient to state a claim for negligent or intentional infliction of emotional distress). For the same reason, the Court finds that Plaintiffs fail to allege a plausible claim for intentional infliction of emotional distress against Hatchett.

**B. More Definite Statement**

        Hatchett moves, in the alternative to his motion to dismiss, for more definite statement. ECF No. 13 at 3-4, 7-8. In support of this alternate motion, Hatchett describes the

---

[26] Further, the Court highlights that the privilege provided by the section "is absolute. It protects a party to a private litigation or a private prosecutor in a criminal prosecution from liability for defamation *irrespective of his purpose in publishing the defamatory matter, of his belief in its truth or even his knowledge of its falsity*." RESTATEMENT (SECOND) OF TORTS § 587 cmt. a. (emphasis added) *quoted in Rodarte v. Wal-Mart Assocs., Inc.*, Case No. 6:12-cv-00055, 2013 U.S. Dist. LEXIS 64458, *17-18 (W.D. Va. May 6, 2013).

[27] This paragraph, which alleges, "As a result of the conduct of Defendant, and, Plaintiffs have suffered, and will continue to suffer in the future, emotional damages, mental anguish and loss of enjoyment of life; and, their money that was in Plaintiff WILLIAMS' wallet, along with the loss of reputation of Plaintiff WILLIAMS," is nearly identical to paragraph numbered 43, that appears in Count II asserting negligence against Defendant Hatchett.

complaint as a "shotgun pleading." ECF No. 13 at 4 n.2. This concept is recognized in the Virgin Islands and has been defined as "'a complaint that, in each count, incorporates all the preceding paragraphs of the complaint, making it virtually impossible to know which allegations of fact are intended to support which claim(s) for relief.'" *Henry v. Hovensa, LLC*, SX-15-CV-568, 2016 V.I. LEXIS 55, at *8 (Super. Ct. May 19, 2016) (quoting *Bell v. Radcliffe*, ST-13-CV-392, 2014 V.I. LEXIS 119 (Super. Ct. April 30, 2014) (internal citation omitted) (internal quotation marks omitted)). Despite Plaintiffs' protestations to the contrary, *see* ECF No. 33 at 5, the mere fact that the complaint is broken down into counts specific to each Defendant does not prevent it from being a "shotgun pleading." The Court finds that the complaint in the matter at bar is similar to the complaint described in *Henry*, where the Superior Court states:

> For Count One, Plaintiff simply incorporated all the preceding paragraphs of the Complaint and alleged that "Defendant were [sic] negligent." The incorporation of all prior paragraphs in the Complaint makes it difficult to identify and isolate the allegations relevant to Count One. What is even more troubling is that the Complaint is unclear whether the allegations under Count One are asserted against Defendant Pinnacle, Defendant Hovensa, or both. Thus, Count One fails to give Defendant Pinnacle reasonable notice of the nature of Plaintiff's claim.

*Henry*, 2016 V.I. LEXIS 55, at *10 (footnote omitted). The *Henry* court continues:

> Similarly for Count Two, Plaintiff simply incorporated all the preceding paragraphs of the Complaint and alleged that "Defendant through Dr. Alejandro Cebedo failed to treat Plaintiff with the standard of care." Again, the Complaint is unclear whether the allegations under Count Two are asserted against Defendant Pinnacle, Defendant Hovensa, or both. And again, the incorporation of all prior paragraphs in the Complaint makes it difficult to identify and isolate the allegations relevant to Count Two. Thus, Count Two fails to give Defendant Pinnacle reasonable notice of the nature of Plaintiff's claim.
>
> Moreover, Plaintiff did not specify what legal theory of liability he is proceeding under. Plaintiff placed the Court and Defendant Pinnacle in the untenable position of having to guess at what claim is being asserted.

*Id.* at *10-11. In the matter at bar, the section titled Count I of the Complaint in this matter reads:

> 38. Plaintiffs re-alleges paragraphs 1 through 37, and incorporates the same be reference.

> 39. The actions of Defendant, FLAT CAY MANAGEMENT, constitute negligent hiring, training and supervision of its employee, defendant SHAQUORI HATCHETT.

Compl. at ¶¶ 38-39. Plaintiffs here, like the plaintiff in *Henry*, fail to identify the alleged facts that support or are relevant to this claim. Even though paragraph 39 identifies specific legal theories of negligence, other allegations could be construed to assert other theories which are not identified, as discussed herein. Additionally, Count II states:

> 41. Plaintiffs re-alleges [sic] paragraphs 1 through 40, and incorporates the same be reference.

> 42. The conduct of Defendant, SHAQUORI HATCHETT constituted negligence.

Compl. at ¶¶ 41-42. Not only do Plaintiffs fail to identify the elements of the tort anywhere in the complaint and then merely recite a legal conclusion, but they also fail to allege what actions attributable to Hatchett form the basis of this claim. This is a quintessential example of shotgun pleading. *See* note 13, *supra*; *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322-23 (11th Cir. 2015) (where the court, in addition to the type discussed in note 13, also identifies three other types of shotgun pleading, two of which Plaintiffs are guilty, here: "a complaint containing multiple counts where each count adopts the allegations of all preceding counts . . . [and] being replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action . . . ").

Even though the Court will grant, in part, Hatchett's motion to dismiss and dismiss some of Plaintiffs claims, because the Court will allow Plaintiffs to replead some of their causes of action, the Court will grant Hatchett's alternate motion for more definite statement as to both the general allegations of the complaint and the specific claims Plaintiffs elect to replead.

## IV. CONCLUSION

Based upon the foregoing, the Court finds that Plaintiffs fail to state a claim for negligence against Hatchett and fail to state claims for the intentional torts of defamation or defamation *per se*. The Court will dismiss those claims with prejudice. Further, the Court finds that Plaintiffs have marginally stated a claim for negligent retention against Flat Cay but have failed to state a claim for negligence based on any other theory. In addition, Plaintiffs fail to allege a plausible claim for intentional infliction of emotional distress against

Flat Cay and will dismiss that claim, as well as any other intentional tort that they did not specifically set forth but may have attempted to imply, with prejudice.

Regarding the claims not dismissed, the Court will allow Plaintiff Ivan Williams to replead separate claims for the intentional torts of assault and conversion against Hatchett. The Court also will allow all Plaintiffs to replead an intentional infliction of emotional distress claim against Hatchett, provided that each Plaintiff sets forth his or her specific and individual injury and the extent thereof. In addition, the Court will allow Plaintiffs to replead claims for negligent retention and negligent infliction of emotional distress against Flat Cay, provided that each claim is asserted separately and sets forth each Plaintiff's specific and individual injury and the extent thereof.

The Court also grants Hatchett's motion, in the alternative, for more definite statement as to the amended complaint and any claims Plaintiffs choose to replead in conformance with this memorandum opinion and accompanying order.

An appropriate Order follows.

**Dated:** March 17, 2023                    */s/ Robert A. Molloy*
                                              **ROBERT A. MOLLOY**
                                              **Chief Judge**